## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
United States Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 8700
Washington, DC 20530,

                              *Plaintiff,*

              v.

WIENERBERGER AG
Wienerbergerplatz 1
1100 Wien, Austria,

GENERAL SHALE BRICK, INC.
3015 Bristol Hwy.
Johnson City, Tennessee 37601,

LSF9 STARDUST SUPER HOLDINGS, L.P.
Washington Mall
7 Reid Street, Suite 304
Hamilton, Bermuda HM 11,

BORAL LIMITED
Level 18
15 Blue Street
North Sydney, NSW 2060, Australia,

              and

MERIDIAN BRICK LLC
6455 Shiloh Rd.
Alpharetta, Georgia 30005,

                              *Defendants*.

Civil Action No.:

## **COMPLAINT**

The United States of America ("United States"), acting under the direction of the

Attorney General of the United States, brings this civil antitrust action against Defendants

Wienerberger AG, its North American subsidiary General Shale Brick, Inc. ("General Shale"),

Meridian Brick LLC ("Meridian"), and Meridian's parent companies Boral Limited and LSF9

Stardust Super Holdings, L.P. to enjoin General Shale's proposed acquisition of Meridian.  The

United States alleges as follows:

## I.      NATURE OF THE ACTION

1.      General Shale's proposed acquisition of its rival, Meridian, would combine two of

the largest residential brick manufacturers in numerous markets across the midwestern and

southern United States.  General Shale and Meridian compete daily to supply a variety of

residential brick to customers ranging from local homebuilders to national construction

companies.  As a result of the transaction, homebuilders of all types likely will pay higher prices,

face reduced innovation, and receive lower quality products for their residential brick supply.

2.      In numerous markets across the United States, General Shale and Meridian are the

two most significant suppliers of residential brick or two of only a few such suppliers.

Homebuilders, particularly in certain areas of Alabama, Indiana, Kentucky, Michigan, Ohio, and

Tennessee depend on competition between General Shale and Meridian to ensure a supply of

quality brick at competitive prices.

3.      Not only has competition between General Shale and Meridian driven residential

brick prices down, it has also fostered product innovation that has resulted in new products and

the broad portfolio that each firm offers today.  For example, competition between these firms

has resulted in the introduction of new color mixes, textures, and facing styles, as well as more

efficient and environmentally sustainable production processes.

4.      By eliminating competition between General Shale and Meridian, the proposed

acquisition would result in higher prices, reduced innovation, and lower quality in the markets

for the design, manufacture, and sale of residential brick.  Accordingly, General Shale's acquisition of Meridian would violate Section 7 of the Clayton Act, 15 U.S.C. § 18, and therefore should be enjoined.

## II.    THE PARTIES AND THE TRANSACTION

5.      General Shale is a Delaware corporation headquartered in Johnson City, Tennessee.  It is a leading U.S. producer of building material solutions and one of North America's largest brick, stone, and concrete block manufacturers.  General Shale operates 11 production facilities in 10 states and provinces.  It also has a network of 21 sales locations and more than 200 affiliated distributors in North America.

6.      Wienerberger AG, an Austrian corporation, is General Shale's parent company.  Based in Vienna, Austria, it is one of the world's largest building materials manufacturers.  Wienerberger AG operates manufacturing and distribution facilities for brick and other construction materials in three continents, including in North America through General Shale.  In 2020, Wienerberger AG's North American business generated revenues of approximately $370 million, 78% of which was derived from brick sales, including residential brick sales.

7.      Meridian is a Delaware limited liability company.  Headquartered in Alpharetta, Georgia, Meridian manufactures and sells construction materials, including commercial and residential brick and masonry materials.  Meridian is the largest brick supplier in the United States.  During fiscal year 2020, it generated revenues of over $400 million, which primarily came from brick sales, including residential brick sales.  Meridian and its sister company Meridian Brick Canada Ltd. make up the Meridian Group, which operates 20 manufacturing facilities and 27 distribution centers throughout North America.  The Meridian Group is directly and indirectly owned by Boral Limited ("Boral") and LSF9 Stardust Super Holdings, L.P.  Boral

is an Australian public company that produces and supplies building and construction materials primarily in North America and Australia.  Boral and LSF9 Stardust Super Holdings, L.P. formed Meridian as a joint venture in 2016.

8.      On December 18, 2020, General Shale announced its intention to acquire Meridian from Boral and LSF9 Stardust Super Holdings, L.P. as part of a total transaction valued at approximately $250 million.

## III.    JURISDICTION AND VENUE

9.      The United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25, as amended, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

10.     Defendants' activities substantially affect interstate commerce.  They manufacture and sell residential brick directly to customers and through third-party distributors throughout the southern and midwestern United States.  This Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

11.     Defendants have consented to venue and personal jurisdiction in this judicial district.  Venue is proper in this district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391(b)(3) and (c)(2) for Meridian and General Shale, and venue is proper for LSF9 Stardust Super Holdings, L.P., Boral Limited, and Wienerberger AG under 28 U.S.C. § 1391(c)(3).

## IV.     RELEVANT MARKETS

### A.     <u>Product Market: Residential Brick</u>

12.     Residential brick is a type of exterior cladding that is used to protect homes and other buildings from weather and the elements.  It comes in various sizes and colors and is primarily comprised of shale or red clay that has been fired in a kiln.  Residential brick of each color and size is manufactured in a substantially similar process, with minor adjustments in the amount of clay or type of color additives used to make a particular brick model.  Indeed, although residential brick comes in varying sizes (e.g., modular, queen, and king) and colors (e.g., red, white, or grey), all residential brick volumes are measured in Standard Brick Equivalents ("SBE").[1]

13.     Residential brick is distinct from commercial brick.  Residential brick is less expensive than commercial brick due to different manufacturing processes.  In particular, commercial brick is made by a process called through-body extrusion.  Through-body extrusion entails a rigorous coloring process that ensures uniform coloring throughout the body of the brick.  This achieves the higher color quality required of commercial brick.  By contrast, residential brick is often colored only on the outer portion of the brick, and the residential brick manufacturing process requires fewer additives and other costly inputs.

14.     Residential brick must meet standard specifications for residential use that are set by the American Society for Testing and Materials ("ASTM").  These standards require certain durability and load capabilities that differentiate residential brick from decorative paving brick as

---

[1] The American Society for Testing and Materials has established a standard brick size for construction uses, which is referred to as the standard brick equivalent or "SBE."  Residential brick of different sizes is converted to SBE units when sold for purposes of measuring the volume sold.

well as "thin" brick, which is a fraction of the thickness of residential brick and has lower structural requirements because it is ornamental.

15.     Residential brick is distinct from other types of exterior cladding.  It has both performance characteristics (such as durability and structural integrity) and aesthetic traits that distinguish it from products such as siding and other exterior claddings.  Customers who prefer the look of residential brick, or whose projects require the unique properties of residential brick, cannot reasonably turn to alternative exterior cladding solutions.

16.     Because of these unique characteristics, substitution away from residential brick in the event of a small but significant increase in price by a hypothetical monopolist of residential brick would be insufficient to make such a price increase unprofitable.  Accordingly, residential brick is a line of commerce, or relevant product market, for purposes of analyzing the effects of the proposed acquisition under Section 7 of the Clayton Act.

**B.      The Relevant Geographic Markets are Local**

17.     Residential brick is generally transported by truck.  Transportation costs can be substantial and typically range from 15% to 30% of the total price of residential brick.  As a result, the geographic markets for residential brick tend to be local, with the specific geographic boundaries of any local market also determined by road infrastructure, traffic conditions, and natural conditions, such as mountain ranges that impose significantly higher fuel costs on the transportation of residential brick to customers in local markets.

18.     The transaction would likely harm competition for residential brick in the following Metropolitan Statistical Areas ("MSAs")[2]: (1) Nashville, Tennessee; (2) Memphis,

---

[2] An MSA is a geographical region defined by the Office of Management and Budget for use by federal statistical agencies, such as the Census Bureau.  It is based on the concept of a core area with a large concentrated population, plus adjacent communities having close economic and

Tennessee; (3) Huntsville, Alabama; (4) Lexington, Kentucky; (5) Louisville, Kentucky; (6) Indianapolis, Indiana; (7) Detroit, Michigan; and (8) Cincinnati, Ohio.

19.     In each of these relevant markets, a small but significant increase in price by a hypothetical monopolist of residential brick would not be defeated by substitution to commercial brick or other claddings, other construction materials, or by arbitrage – i.e., a buyer cannot purchase outside the MSA and transport the residential bricks itself without incurring prohibitive transportation costs.  Accordingly, the sale of residential brick in each of these MSAs constitutes a relevant market for purposes of analyzing the effects of the acquisition under Section 7 of the Clayton Act.

## V.     ANTICOMPETITIVE EFFECTS

20.     The proposed transaction would significantly increase concentration in the relevant markets and harm consumers by eliminating the substantial head-to-head competition that currently exists between General Shale and Meridian.

21.     For each relevant market, General Shale and Meridian are among the top suppliers of residential brick by volume sold and have a competitive advantage because of the proximity of their manufacturing facilities to customers in each relevant market.  Further, only two or three significant competitors, including General Shale and Meridian, supply each relevant market.  Other residential brick suppliers face significantly higher transportation costs to serve these markets and thus have limited competitive significance.  Competition between General Shale and Meridian has also spurred product innovation that has yielded higher quality and a variety of innovative residential brick products, including new colors, textures, and facing styles.

---

social ties to the core.  For the purposes of this Complaint, it includes the dense central business districts in the named cities as well as the adjacent, connected communities.

22.     Homebuilders and other customers in the relevant markets thus rely on competition between General Shale and Meridian to supply a variety of quality residential brick at competitive prices.  By eliminating this competition, the proposed transaction would likely lead to higher prices and reduced investment in innovation and quality.

### A.     __The Nashville, Tennessee MSA__

23.     In 2020, Tennessee was the second-largest brick consuming state in the United States.  General Shale and Meridian supplied approximately 54% of the total brick volume sold in Tennessee in 2020.  General Shale and Meridian are particularly important suppliers for the Nashville MSA, where they are the top two suppliers of residential brick by volume and face only each other as significant competitors.  General Shale and Meridian are the only significant suppliers of residential brick that operate brick manufacturing facilities located within 150 miles of Nashville, and no other significant supplier has a manufacturing facility located within 200 miles.

### B.     __The Memphis, Tennessee MSA__

24.     General Shale and Meridian are also important suppliers of residential brick for the Memphis MSA, where they face only one other significant competitor.  These three firms are the only significant suppliers that operate brick manufacturing facilities within 200 miles of Memphis, and no other significant supplier of residential brick has a facility located within 350 miles.

### C.     __The Huntsville, Alabama MSA__

25.     Alabama consumed the fifth most bricks of any state in the nation in 2020. General Shale and Meridian are two of the top three residential brick suppliers in Alabama and combined supplied over 43% of the total brick volume sold in Alabama in 2020.  General Shale

and Meridian are particularly important suppliers for the Huntsville MSA, where they are two of the top three residential brick suppliers by volume and face only one other significant competitor.  These three firms are the only significant suppliers that operate a residential brick manufacturing facility located within 125 miles of Huntsville.

       **D.**      **The Lexington, Kentucky MSA**

26.     General Shale and Meridian supplied over 50% of the total brick volume sold in Kentucky in 2020.  General Shale and Meridian are particularly important suppliers for the Lexington MSA, where they are the two largest suppliers of residential brick by volume and face only each other as significant competitors.  General Shale and Meridian are the only significant residential brick suppliers located within 50 miles of Lexington; the next closest residential brick manufacturer is over 230 miles away.

       **E.**      **The Louisville, Kentucky MSA**

27.     General Shale and Meridian are also important residential brick suppliers for the Louisville MSA.  In the Louisville MSA, the proposed acquisition would reduce the number of significant competitors for residential brick from three to two, as the merging parties own two of the three brick manufacturing facilities located within 200 miles of Louisville.  Following the transaction, the third-closest significant residential brick manufacturer would be located over 300 miles away.

       **F.**      **The Indianapolis, Indiana MSA**

28.     General Shale and Meridian are the top two suppliers of residential brick to customers in Indiana.  In 2020, they combined to supply over 45% of the total brick volume sold in the state.  General Shale and Meridian are particularly important suppliers of residential brick for the Indianapolis MSA, where they face only one other significant competitor.  These three

firms are the only significant suppliers that operate a residential brick manufacturing facility located within 100 miles of Indianapolis, with the next closest competitor located almost 350 miles away.

       **G.**    **The Detroit, Michigan MSA**

      29.    General Shale and Meridian are the first and third largest suppliers of brick to customers in Michigan.  In 2020, General Shale and Meridian supplied 45% of the total brick volume sold in the state.  General Shale and Meridian are particularly important suppliers for the Detroit MSA, where they are the top two competitors for residential brick by volume.  In this market, the proposed acquisition would reduce the number of significant suppliers for residential brick from three to two with these three firms being the only significant suppliers that operate residential brick manufacturing facilities within 375 miles of Detroit.

       **H.**    **The Cincinnati, Ohio MSA**

      30.    General Shale and Meridian are the top two residential brick suppliers to customers in Ohio.  In 2020, General Shale and Meridian supplied 28% of the total brick volume sold in the state.  General Shale and Meridian are particularly important suppliers for the Cincinnati MSA, where they are the top two competitors for residential brick by volume and face only one other significant supplier.  These three firms are the only significant suppliers with residential brick manufacturing facilities located within 200 miles of Cincinnati, and no other significant manufacturer has a facility within 350 miles.

**VI.**    **ENTRY**

      31.    Entry into the relevant markets would be costly and time-consuming and is unlikely to prevent the harm to competition that is likely to result from the proposed transaction. The time and expense required to construct manufacturing facilities, acquire necessary

equipment, develop product formulas, and overcome regulatory obstacles, such as obtaining building and usage permits and ensuring environmental and workplace safety compliance, would take years of planning and significant financial investment.

32.     Additionally, repositioning by a commercial brick manufacturer is unlikely to mitigate the harm that would result from the proposed transaction.  Switching from producing commercial brick to producing residential brick would come at a significant opportunity cost as commercial brick sales generally yield a higher profit margin than residential brick. Accordingly, it is unlikely that a manufacturer of commercial brick would be incentivized to switch to supplying residential brick.

## VII.    VIOLATIONS ALLEGED

33.     General Shale's proposed acquisition of Meridian is likely to substantially lessen competition in each of the relevant markets for the design, manufacture, and sale of residential brick set forth above in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

34.     Unless enjoined, the acquisition likely would have the following anticompetitive effects, among others, in the relevant markets:

(a)     actual and potential competition between General Shale and Meridian would be eliminated;

(b)     competition generally would be substantially lessened; and

(c)     prices for the relevant products would likely increase, and innovation and the quality of those products likely would decline.

## VIII.   REQUEST FOR RELIEF

35.     The United States request that this Court:

(a)     adjudge and decree General Shale's proposed acquisition of Meridian to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b)     preliminarily and permanently enjoin Defendants and all persons acting on their behalf from consummating the proposed acquisition by General Shale of Meridian or from entering into or carrying out any other contract, agreement, plan, or understanding, the effect of which would be to combine Meridian with the operations of General Shale;

(c)     award the United States the costs for this action; and

(d)     grant the United States such other relief as the Court deems just and proper.

Dated: October 1, 2021

Respectfully Submitted,

FOR PLAINTIFF UNITED STATES:

<table>
<tr><td>_____/s/ Richard A. Powers_____</td><td>_____/s/ Jay D. Owen_____</td></tr>
<tr><td>RICHARD A. POWERS<br>Acting Assistant Attorney General<br>Antitrust Division</td><td>JAY D. OWEN<br>Acting Chief<br>Defense, Industrials, and Aerospace Section<br>Antitrust Division</td></tr>
<tr><td><br>_____/s/ Kathleen S. O'Neill_____</td><td><br>_____/s/ Soyoung Choe_____</td></tr>
<tr><td>KATHLEEN S. O'NEILL<br>Senior Director of Investigations and<br>Litigation<br>Antitrust Division</td><td>SOYOUNG CHOE<br>Acting Assistant Chief<br>Defense, Industrials, and Aerospace Section<br>Antitrust Division</td></tr>
<tr><td></td><td><br>_____/s/ Daniel J. Monahan, Jr._____<br>DANIEL J. MONAHAN, JR.*<br>STEPHEN A. HARRIS<br>MATTHEW C. FELLOWS (D.C. Bar #1736656)<br>Trial Attorneys<br>United States Department of Justice<br>Antitrust Division, Defense, Industrials, and<br>Aerospace Section<br>450 Fifth Street N.W., Suite 8700<br>Washington, DC 20530<br>Telephone: (202) 598-8774<br>Facsimile: (202) 514-9033<br>Email: Daniel.Monahan@usdoj.gov<br><br>*LEAD ATTORNEY TO BE NOTICED</td></tr>
</table>